IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARYETTA HOPPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-04-1038-M |
| | ) | |
| JO ANNE BARNHART, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Maryetta Hopper seeks judicial review of a denial of benefits by the Social Security Administration ("SSA"). Reversal and remand are necessary because of the administrative law judge's failure to address an impairment, improper rejection of a treating physician's opinions, and failure to develop the record.[1]

## I.     BACKGROUND

Ms. Hopper applied for disability insurance benefits and supplemental security income,[2] and the SSA denied the applications initially and on reconsideration.[3] A United States Administrative Law Judge conducted a hearing, applied the five-step process

---

[1]     The Court has referred the action to the undersigned for findings and recommendations on dispositive matters. Order of Referral to United States Magistrate Judge (Aug. 24, 2004).

[2]     Administrative Record at pp. 48-50, 164-66 (certified Oct. 5, 2004) ("Rec.").

[3]     Rec. at pp. 23-24, 167, 171.

mandated under 20 C.F.R. §§ 404.1520(b)-(f) and 416.920(b)-(f), and rejected the Plaintiff's

claims.  Rec. at pp. 16-22 (decision), pp. 180-221 (hearing).[4]

The Appeals Council declined jurisdiction,[5] and the present action followed.  Ms.

Hopper alleges: (1) failure to consider her obesity, (2) improper rejection of a treating

physician's opinions, (3) failure to develop the record, and (4) improper reliance on the grids.

Plaintiff's Opening Brief at pp. 6-10 (Jan. 14, 2005) ("Plaintiff's Opening Brief"); Plaintiff's

Reply Brief at pp. 1-6 (Mar. 29, 2005) ("Plaintiff's Reply Brief").

II.    STANDARD OF REVIEW

The Court must determine whether the SSA's decision is based on substantial

evidence and the correct legal standard.  *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th

Cir. 2005).  If the SSA's decision lacks substantial evidence or is based on an incorrect legal

standard, reversal is necessary.  *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984);

---

[4]    At step one, the administrative law judge found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Rec. at pp. 18, 21.

At step two, the judge found that Ms. Hopper had severe impairments involving degenerative disc disease and spondylolisthesis.  *Id.*

At step three, the judge found that the Plaintiff did not have an impairment or combination of impairments that met or equaled a "listing".  *Id.*

At step four, the administrative law judge determined that the Plaintiff retained the residual functional capacity ("RFC") to perform light work that would require only occasional stooping.  *Id.* at pp. 20-21.  Based on this RFC assessment, the judge determined that Ms. Hopper could not perform her past relevant work.  *Id.*

At step five, the administrative law judge utilized the grids and concluded that the Plaintiff was not disabled.  *Id.* at pp. 20, 22.

[5]    Rec. at pp. 8-10.

2

*see also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) ("if the [administrative law judge] failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence").

III.    FAILURE TO CONSIDER OBESITY

Ms. Hopper contends that the administrative law judge had failed to consider her obesity throughout the evaluation process.  Plaintiff's Opening Brief at pp. 6-7; Plaintiff's Reply Brief at pp. 1-3.  The undersigned agrees.

A claimant's obesity bears on whether the impairment is medically determinable, is severe, meets or equals a listing, and prevents past relevant work or other work that exists in significant numbers in the national economy.  *See* Social Security Ruling 02-01p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 2000 WL 628049, Westlaw op. at 3 (Sept. 12, 2002).  While obesity alone may not be severe, the impact from its combination "with other impairments can be greater than the effects of each of the impairments considered separately." *Id.*, 2000 WL 628049, Westlaw op. at 1.  Thus, the SSA has instructed administrative law judges to consider obesity throughout the disability determination process and explain any related findings.  *Id.*, Westlaw op. at 1, 7; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(Q) (2004).[6]

---

[6]     This regulation states:

The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately.  Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's [RFC],

Ms. Hopper was five feet, eight inches tall and weighed 258 pounds, and a consultative examiner and treating physician diagnosed obesity. Rec. at pp. 99, 107. This evidence indicates a medically determinable impairment from obesity. *See* Social Security Ruling 02-01p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 2000 WL 628049, Westlaw op. at 3 (Sept. 12, 2002) (diagnosis of obesity by a treating physician or medical records indicating consistently high body weight is sufficient to establish the existence of obesity as a medically determinable impairment). As a result, the administrative law judge had to evaluate the impact of the obesity throughout the disability determination process. *See supra* p. 3.[7]

The administrative law judge never discussed Ms. Hopper's obesity, and the omission constituted reversible error under the SSA's internal requirements. *See supra* p. 3.

---

adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(Q) (2004).

[7]     The Defendant argues that the Plaintiff did not allege that obesity had significantly restricted her activities. Brief in Support of the Commissioner's Decision at p. 3 (Mar. 15, 2005) ("Defendant's Brief"). Even without an allegation by Ms. Hopper, the medical evidence would have dictated consideration of obesity in combination with the other impairments. *See Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) ("While [the claimant] did not claim obesity as an impairment when filing her Disability Report, the evidence should have alerted the [administrative law judge] that [she] had another relevant impairment that could contribute to the cumulative effect of her other impairments."); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1263-64 (10th Cir. 2005) (holding that disregard of a mental impairment constituted error even though it had not been asserted in the plaintiff's application for benefits).

4

IV.    VIOLATION OF THE TREATING PHYSICIAN RULE

Dr. Cornwell treated Ms. Hopper and diagnosed her with depression, peripheral neuropathy, and cutaneous femoral nerve entrapment in the left leg. Rec. at pp. 125, 127-28. Ms. Hopper alleges violation of the treating physician rule through the administrative law judge's evaluation of Dr. Cornwell's opinions. Plaintiff's Opening Brief at pp.7-9; Plaintiff's Reply Brief at pp. 3-5. The judge did indeed err.

A.     The Evaluation of a Treating Source's Opinion

The administrative law judge must follow certain steps in the evaluation of a treating doctor's opinion. The threshold determination is whether the opinion qualifies for controlling weight. *See Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (*per curiam*). Even if the opinion is not given controlling weight, the administrative law judge must weigh the opinion based on the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the degree to which the opinion is supported by relevant evidence, the consistency between the opinion and the record as a whole, the degree of specialization of the doctor, and the existence of other factors. *See id*. The judge must then supply "good reasons" for the weight assigned to the treating physician's opinion. *Id.* If the judge rejects the opinion, he must supply "specific, legitimate reasons." *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).

B.    The Plaintiff's Depression

Dr. Cornwell diagnosed the Plaintiff with depression,[8] but the administrative law judge improperly disregarded the diagnosis.

The judge assessed the RFC without any mental limitations,[9] omitting any mention of Dr. Cornwell's diagnosis of depression.[10]   The judge should have evaluated the opinion and explained any related findings.  *See supra* p. 5.  Absent any mention of Dr. Cornwell's diagnosis of depression, the Court should reverse because of its inability to effectively review the administrative law judge's RFC assessment.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004) (*per curiam*) ("Because we conclude that the [administrative law judge] did not follow the correct legal standards in considering the opinion of claimant's treating physician, we reverse and remand for further proceedings.").[11]

---

[8]      Rec. at pp. 127-28; *see supra* p. 5.

[9]      *See supra* note 4.

[10]      *See* Rec. at pp. 16-22.

[11]      The Defendant contends that "an [administrative law judge] may reject any physician's opinion when it is inconsistent with that physician's own treatment notes or the record as a whole." Defendant's Brief at p. 6.  The Defendant is correct, but the contention is inapplicable because the judge did not state that he was rejecting Dr. Cornwell's opinion on this basis.  *See Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) ("the district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself" (citations omitted)); *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this *post hoc* effort to salvage the [administrative law judge's] decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.").

C.     The Plaintiff's Cutaneous Femoral Nerve Entrapment and Peripheral Neuropathy

Dr. Cornwell diagnosed the Plaintiff with peripheral neuropathy and a cutaneous femoral nerve entrapment in her left leg.  Rec. at pp. 125, 127-28; *see supra* p. 5.  The administrative law judge recognized Dr. Cornwell's diagnoses,[12] but did not identify or explain their significance.

Dr. Cornwell's treatment notes indicate that the Plaintiff had partially dragged her left leg and that she had experienced pain and numbness from her left lateral and anterolateral thigh.  Rec. at p. 127.  These symptoms were consistent with a lateral femoral cutaneous nerve entrapment.  *See id.* at p. 129 (medical literature stating that "[s]ymptoms associated with [lateral femoral cutaneous nerve entrapment] are entirely sensory and include pain and dysesthesia in the anterolateral and lateral thigh that sometimes extends to the lateral knee").

The Plaintiff also described symptoms that would support Dr. Cornwell's diagnosis of peripheral neuropathy.  For example, at the hearing, Ms. Hopper described the pain as a feeling "like somebody stabbing needles in [her]."  Rec. at p. 197.  And when Ms. Hopper applied for benefits, she described the pain as a feeling "like pins sticking in [her]."  *Id*. at p. 79.

These descriptions would support a diagnosis of peripheral neuropathy.  For example, Doctors Omer and Spinner stated:

---

[12]    Rec. at p. 19.

> Patients who suffer from any form of peripheral neuropathy will often describe their symptoms by characteristic expressions, using such words as prickling, burning, or jabbing sensations, which will often indicate to the knowledgeable physician whether or not there is a disease in the peripheral nerves.

G. Omer & M. Spinner, *Management of Peripheral Nerve Problems* 712 (1980); *see also*

J. Stewart, *Focal Peripheral Neuropathies* 46 (3d ed. 2000) (stating that one sensation "often experienced by patients with focal neuropathies" involves "tingling" or "prickling", which is "often described as 'pins and needles'").[13]

As discussed above, Dr. Cornwell pointed out that Ms. Hopper had partially dragged her left leg. Rec. at p. 127; *see supra* p. 7. And Doctors Omer and Spinner noted that disease of the peripheral nerves is frequently indicated by descriptions of muscle weakness, "such as an inability to pick up [the patient's] feet or toes without stumbling." G. Omer & M. Spinner, *Management of Peripheral Nerve Problems* 712 (1980); *see also supra* note 13 (discussing judicial notice of medical literature). Thus, the partial dragging of the left leg also supported Dr. Cornwell's diagnosis.

The administrative law judge did not discuss this medical evidence or specify the weight given to Dr. Cornwell's diagnoses. Instead, the judge simply pointed out that a Doppler ultrasound was negative and that objective testing did not exist to confirm the

---

[13]     The Court can take judicial notice of this medical literature. *See Seales v. Barnhart*, Case No. CIV-02-46-T, slip op. at p. 8 n.8 (W.D. Okla. Nov. 22, 2002) (report and recommendation by magistrate judge, suggesting judicial notice of medical information available on the internet), *adopted* (W.D. Okla. Dec. 20, 2002); *see also United States v. Howard*, 381 F.3d 873, 880 n.7 (9th Cir. 2004) (taking judicial notice of medical facts).

diagnoses.  Rec. at p. 19.  The administrative law judge did not say whether he was rejecting

or discounting Dr. Cornwell's opinions based on these observations.  The ambiguity in the

decision is significant here because the administrative law judge's observations would appear

to be illegitimate reasons to reject Dr. Cornwell's opinions.

First, the Doppler ultrasound is used to detect abnormalities in the arterial blood flow.

*See* National Institute of Health, *MedlinePlus Medical Encyclopedia: Doppler ultrasound

exam of an arm or leg* (available at *http://www.nlm.nih.gov/medlineplus/ency/article/

003775.htm*); *see also supra* note 13 (discussing judicial notice of medical literature).

"Peripheral neuropathy" is a disorder involving the nervous system, rather than the arterial

blood flow.  *See* G. Omer & M. Spinner, *Management of Peripheral Nerve Problems* 712

(1980) ("A peripheral neuropathy is a disorder affecting, to a variable degree, the peripheral

motor, sensory, or autonomic nerves."); *see also supra* note 13 (discussing judicial notice of

medical literature).

Second, the administrative law judge's discussion suggests an erroneous belief that

objective testing is necessary for a reliable diagnosis of peripheral neuropathy.  Because of

the subjective nature of the symptoms, a physician can frequently diagnose peripheral

neuropathy without laboratory tests.  For example, two authorities stated:

> From the clinical point of view, when can we state that a [Peripheral
> Neuropathy] has begun?
>
> It is well-known that some of the clinical data in cases of [Peripheral
> Neuropathy] are totally subjective, such as sensibility disturbances, some of
> the autonomic features (e.g., loss of sweating) and, at the beginning of the
> disease, to a certain degree, weakness of the muscles.

9

. . . .

Confronted with a patient showing a classical clinical picture of severe weakness or flaccid paralysis, areflexia and, in some cases, certain sensibility disturbances, the diagnosis of [Peripheral Neuropathy] can be made, especially in cases with an acute course.

F. Escobedo & N. Ruben, *Problems Associated with the Clinical Diagnosis of Peripheral Neuropathies* 85-86, 88, reprinted in *International Conference on Peripheral Neuropathies: 24th-25th June, 1981, Madrid* (1982); *see also supra* note 13 (discussing judicial notice of medical literature).

A similar situation arose in *Robinson v. Barnhart*, 366 F.3d 1078 (10th Cir. 2004) (*per curiam*).   There the plaintiff challenged the administrative law judge's evaluation of a treating physician's opinion.   *See Robinson v. Barnhart*, 366 F.3d at 1080.   The administrative law judge stated that the opinion had been vague and had not identified specific symptoms or indicated the severity of each limitation. *See id.* at 1081.   The Tenth Circuit Court of Appeals held that the administrative law judge had erred.   *Id.* at 1082-83; *see supra* p. 6.   According to the court, the errors existed because the administrative law judge had failed to specify the weight given to the opinion and had not discussed the relevant factors.  *Robinson v. Barnhart*, 366 F.3d at 1083.

*Robinson v. Barnhart* dictates reversal under the present facts.  The administrative law judge pointed out that Dr. Cornwell had diagnosed nerve entrapment and peripheral

neuropathy even though a Doppler ultrasound result was negative and there were not objective test results to support either condition. Rec. at p. 19; *see supra* pp. 8-9. But the judge did not specify the weight given to Dr. Cornwell's opinions or discuss many of the relevant factors. For example, the judge never discussed the length of the treatment, its frequency, the nature and extent of the treatment, or the degree of the physician's specialization. *See supra* p. 5. These omissions create reversible error under *Robinson v. Barnhart*. *See also Cunningham v. Apfel*, 222 F.3d 496, 502 (8th Cir. 2000) (holding that the SSA had erred through its failure to properly consider a treating physician's diagnosis of peripheral neuropathy); *Barrientoz v. Massanari*, 202 F. Supp. 2d 577, 588-92 (W.D. Tex. 2002) (holding that the administrative law judge had erred through the rejection of a treating physician's diagnosis of peripheral neuropathy without discussion of the pertinent factors).

V.       FAILURE TO DEVELOP THE RECORD

Ms. Hopper also alleges that the administrative law judge had failed to develop the record concerning the depression, the nerve entrapment, and the peripheral neuropathy. Plaintiff's Opening Brief at pp. 8-9; Plaintiff's Reply Brief at pp. 4-5. The undersigned agrees.

A.       The Duty to Develop the Record

The administrative law judge must develop an adequate record relevant to the issues raised even when the claimant is represented by counsel. *See Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997). This duty requires the administrative law judge to inform

himself about "facts relevant to his decision and to learn the claimant's own version of those facts." *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

    B.    <u>The Plaintiff's Depression</u>

The record contained sufficient evidence of the Plaintiff's depression to trigger a duty to further develop the record. First, Dr. Cornwell had diagnosed the Plaintiff with depression and prescribed an antidepressant. *See* Rec. at pp. 127-28; *see supra* pp. 5-6. Second, the record indicated that Dr. Rigney had prescribed an antidepressant. Rec. at pp. 92, 94. Third, the Plaintiff testified that she was to obtain mental health counseling after the administrative hearing. *Id.* at p. 220. Nonetheless, the administrative law judge ignored the diagnosis of depression without any inquiry.

The Tenth Circuit Court of Appeals addressed a similar issue in *Carter v. Chater*, 73 F.3d 1019 (10th Cir. 1996). In *Carter*, the plaintiff had not specifically alleged depression in her disability application, but the record contained a diagnosis of depression. *See Carter v. Chater*, 73 F.3d at 1021-22. The administrative law judge disregarded the opinion, citing a lack of supporting evidence. *See id.* at 1022. According to the plaintiff, the administrative law judge had failed to develop the record concerning the depression. *See id.* at 1021. The Tenth Circuit Court of Appeals agreed, stating:

> The [administrative law judge's] only stated reason for discounting [the plaintiff's] diagnosis of depression was that there were no medical tests to support it. However, he made no effort to obtain such tests or to determine what testing Dr. Foley might have performed. We therefore remand for further development of the record concerning [the plaintiff's] claims of depression.

*Id.* at 1022 (citations omitted).

*Carter v. Chater* is controlling.  One physician diagnosed depression,[14] two doctors had prescribed an antidepressant,[15] and Ms. Hopper was to begin mental health counseling after the hearing.  *See supra* p. 12.  Nonetheless, the administrative law judge did not include symptoms of depression in the RFC assessment or inquire further about the potential limitations resulting from Ms. Hopper's mental condition.  Under *Carter v. Chater*, the administrative law judge erred through his failure to develop the record concerning the Plaintiff's depression.[16]

C.    The Plaintiff's Cutaneous Femoral Nerve Entrapment and Peripheral Neuropathy

The Plaintiff also contends that the administrative law judge had failed to develop the record concerning her cutaneous femoral nerve entrapment and peripheral neuropathy. Plaintiff's Opening Brief at pp. 8-9; Plaintiff's Reply Brief at pp. 3-4.  According to Ms. Hopper, the administrative law judge should have recontacted Dr. Cornwell for clarification

---

[14]    *See Sanchez v. Apfel*, 210 F.3d 390, 2000 WL 376616, Westlaw op. at 3 (10th Cir. Apr. 13, 2000) (unpublished op.) ("Dr. Gonzales's diagnosis of major depression triggered the [administrative law judge's] duty to further develop the record concerning that impairment." (citation omitted)).

[15]    *See Redfearn v. Chater*, 99 F.3d 1150, 1996 WL 594278, Westlaw op. at 2 (10th Cir. Oct. 17, 1996) (unpublished op.) (concluding that the use of medication for nervousness and depression, combined with the claimant's testimony, "required the [administrative law judge] to further develop the record concerning depression" (citation omitted)).

[16]    The Defendant argues that: (1) an agency physician opined that Ms. Hopper had not suffered from a medically determinable mental impairment, and (2) she was not receiving ongoing treatment. Defendant's Brief at p. 6.  But the administrative law judge did not cite either reason, and the Court cannot affirm based on the Defendant's *post hoc* justification.  *See supra* note 11.

of her opinion.  Plaintiff's Opening Brief at p. 8; Plaintiff's Reply Brief at pp. 3-4.  The undersigned agrees.[17]

The SSA requires the administrative law judge to recontact a treating physician for clarification of an opinion if it: (1) contains a conflict or ambiguity, (2) does not contain all of the necessary information, or (3) is not based on medically acceptable clinical and laboratory diagnostic techniques.  *See* 20 C.F.R. §§ 404.1512(e)(1), 416.927(e)(1) (2004).  The administrative law judge acknowledged Dr. Cornwell's diagnoses of a nerve entrapment and peripheral neuropathy and did not expressly reject them.  *See supra* pp. 7, 9.  But the judge remarked that the diagnoses had appeared to conflict with a Doppler ultrasound result and lack support based on objective testing.  *See supra* pp. 8-9, 10-11.  As a result, the administrative law judge could not reject the opinions without recontacting Dr. Cornwell for clarification.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (*per curiam*) (holding that the administrative law judge had erred when he failed to recontact a treating physician for clarification of his opinion rather than reject it based on a lack of supporting evidence); *see also Barrientoz v. Massanari*, 202 F. Supp. 2d 577, 591-92 (W.D. Tex. 2002) (holding that the administrative law judge had erred in his rejection of a diagnosis of

---

[17]     In the alternative, the Plaintiff contends that the administrative law judge should have ordered a consultative examination.  Plaintiff's Opening Brief at pp. 8-9.  Because the administrative law judge erred in his failure to recontact Dr. Cornwell, the Court need not address the Plaintiff's alternative argument.  *See Cox v. Apfel*, 198 F.3d 257, 1999 WL 820215, Westlaw op. at 3 (10th Cir. Oct. 14, 1999) (unpublished op.) ("Because we are remanding for the [administrative law judge] [to] consider plaintiff's alleged mental impairment in the first instance, we do not address whether a consultative examination is required.").

peripheral neuropathy without recontacting the treating physician if his records were deemed inconclusive or inadequate).  The failure to recontact Dr. Cornwell constitutes reversible error.

## VI.    THE PLAINTIFF'S REMAINING ALLEGATION OF ERROR

The Plaintiff also challenges the administrative law judge's reliance on the grids at step five.  Plaintiff's Opening Brief at pp. 9-10; Plaintiff's Reply Brief at pp. 5-6.  The suggested remand for further development of the record and reconsideration of the obesity and Dr. Cornwell's opinions would in turn require reevaluation of the RFC, which could affect the findings at step five.  As a result, the Court need not address the Plaintiff's remaining claim involving reliance on the grids.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the [administrative law judge's] treatment of this case on remand.").

## VII.    RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

The Court should reverse and remand for further proceedings in the SSA.

Any party may file written objections with the Clerk of the United States District Court.  *See* 28 U.S.C. § 636(b)(1) (2000).  The objections are due June 15, 2005.  *See* W.D. Okla. LCvR 72.1(a).  If a party does not file written objections by June 15, 2005, she would waive any right to appellate review.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

15

VIII.   STATUS OF THE REFERRAL

The referral to the undersigned is terminated.

Entered this 26th day of May, 2005.


_____
Robert E. Bacharach
United States Magistrate Judge